STATE of Minnesota, Respondent,

v.

Debra Ann SOUTO, petitioner, Appellant.

No. C4–96–1957.

Supreme Court of Minnesota.

May 14, 1998.

John A. Winters, Crookston, for appellant.

Hubert Humphrey, III, Attorney General, by Thomas R. Ragatz, Assistant Attorney General, David M. Olin, Pennington County Attorney, for respondent.

OPINION

GARDEBRING, Justice.

Debra Ann Souto appeals from her conviction in the Pennington County District Court for possession of a controlled substance in the fifth degree in violation of Minn.Stat. § 152.025, subd. 1(2), 3(b) (1996). The conviction resulted from a search of Souto's residence, pursuant to a warrant, that uncovered a vial containing less than one gram of methamphetamine.

Souto challenges the sufficiency of the information contained in the warrant application to establish probable cause to believe that drugs or records concerning drug transactions would be found at her residence. Specifically, Souto argues that the affidavit is deficient in the following ways: it fails to establish a nexus between her alleged drug activities and her residence; it relies on stale information; and it fails to provide sufficient information regarding the reliability of the informant. Because we hold that there is no substantial basis for a probable cause determination that drugs or other incriminating evidence would be found at the residence at the time it was searched, we reverse the court of appeals and vacate Souto's conviction.

On September 8, 1994, Special Agent Ron Woolever of the Paul Bunyan Narcotic Task Force, a multi-county anti-drug crime unit, executed a search warrant on Souto's residence, looking for drugs and documents linking her to suspected drug trafficker, Karl Heinrichs. The warrant was one of ten executed that day as part of an extensive investigation of drug activity that involved 35 to 40 individuals in Pennington County. The affidavit in support of the search warrant application states, in pertinent part:

On November 17, 1993, S/A Woolever spoke with United States Postal Inspectors, Al Eckland and Steve Crow, with Eckland and Crow telling S/A Woolever that they had intercepted a package addressed to Debbie Souto of 1516 Northland Village, #104, Thief River Falls, MN 56701, with a return address from "D", of 6333 Edgerton Way, Carmichael, CA, 95606. Postal Inspectors Eckland and

Crow told S/A Woolever that the package would have to be returned to them from the Thief River Falls Post Office to the Minneapolis/St. Paul [Office], whereas [sic] they could get a certified canine to sniff the package.

On November 19, 1993, S/A Woolever spoke with U.S. Postal Inspectors Al Eckland and Steve Crow, with Eckland and Crow stating that the package addressed to Debbie Souto had in fact, arrived in their custody, and had in fact, been positively hit upon by a Postal Inspection canine, indicating a controlled substance. Subsequent to these facts, a warrant was drafted and signed by the Honorable Magistrate J. Earl Cudd on November 19, 1993.

On Saturday, November 20, 1993, S/A Woolever met with U.S. Postal Inspectors Al Eckland and Steve Crow in the city of Thief River Falls, where a controlled delivery of a package addressed to Debbie Souto was attempted to be delivered to the residence of Debbie Souto, known as 1516 Northland Village, # 104, Thief River Falls, MN 56701. After numerous attempts, the package was not received and subsequently the package was turned over to S/A Woolever's custody at a later date.

\* \* \* \* \* \*

On Thursday, May 5, 1994, at approximately 2:00 p.m., S/A Woolever along [with] other Police Officials met with [Confidential Reliable Informant] CRI# 4, who had proven reliable and credible through information received that was corroborated through North Dakota BCI Special Agent John Fugelberg, in Grand Forks, ND.

\* \* \* \* \* \*

CRI# 4 told agents that between the months of September 1993 and February 1994, CRI# 4 would have parties at his residence, located in rural Pennington County, sometimes as many as 3 times a month, during the weekends. Numerous individuals would show up, smoke marijuana, and ingest methamphetamine either by smoking or snorting. CRI# 4 went on to further state that the individuals mostly known for smoking or snorting methamphetamine were [thirteen named individuals, including Souto]. CRI# 4 also stated that on most occasions when [Collin Bryl] would show up, [Bryl]

would have his own supply of methamphetamine, otherwise the methamphetamine was supplied at the parties by [John Matson], or [CRI# 4]. CRI# 4 also stated that on most occasions at these parties, marijuana was prevalent, and was usually supplied by [Mark Delage] or [Wayne Delage].

\* \* \* \* \* \*

CRI# 4 told agents that while having a conversation with [Heinrichs] in February 1994, [Heinrichs] stated to CRI# 4 that he received his methamphetamine from a female in the Sacramento, CA area, and the female would mail packages overnight express mail to [Beef] (at this time unknown), or other friends of [Heinrichs].

\* \* \* \* \* \*

CRI# 4 stated that in the later weeks of February 1994, CRI# 4 purchased 1 ounce of methamphetamine from [Heinrichs] for $1700 in U.S. currency. This transaction took place at the [Heinrichs] residence located in Fargo, ND. CRI# 4 stated to agents that he sold this methamphetamine to [five named persons, one of whom was Souto] from the Thief River Falls area.

Your affiant knows through information received from Federal, State and local law enforcement officers and a number of Confidential Reliable Informants, that [Souto] is involved in the possession and/or distribution of methamphetamine, and/or marijuana on a wide scale, in and around the Thief River Falls, Pennington County area, with a known affiliation being [Heinrichs], a former Thief River Falls native, now living in Fargo, ND.

Your affiant also knows that numerous phone calls were placed and received between the [Heinrichs/Toppen] residence and the [Souto] residence, during the last year, with this knowledge being supplied through the use of a Pen Register and Trap and Trace.

Based on the above facts, your affiant believes that [Souto] is involved with [Heinrichs] and/or [Toppen] (and/or other individuals in the Thief River Falls/Pennington County area) in a continuing criminal enterprise involving the possession and/or distribution of methamphetamine

and/or marijuana throughout the Thief River Falls, Pennington County area.

The affidavit goes on to state that, based on the officer's training and experience with narcotics operations, he knew that drug traffickers maintain records, documents, etc., relating to the trafficking and that these items are usually maintained within the trafficker's home or vehicle. The warrant application sought authorization to search the "premises described as P.O. Box 267, St. Hilaire, MN 56754," any vehicles located there, and Souto's person.[1] The affidavit does not state whether Souto lived at or frequented this residence.

Upon execution of the search warrant, police found a brown vial in Souto's purse containing trace amounts of methamphetamine. They also seized other drug paraphernalia. Souto was subsequently charged with possession of the methamphetamine in violation of Minn.Stat. § 152.025, subd. 1(2), 3(b). After a pretrial omnibus hearing, the court denied Souto's motion to suppress the evidence for lack of probable cause to support the search warrant and, following a bench trial, found Souto guilty of a controlled substance crime in the fifth degree.

The court of appeals affirmed Souto's conviction, holding that the search warrant was supported by probable cause. The court reasoned that "[a]lthough the application may lack a strong link between the criminal activity and Souto's residence, the application reflects a more important link: that between the criminal activity and Souto herself." *State v. Souto*, No. C4–96–1957, 1997 WL 177653 (Minn.App. April 15, 1997) (unpub.) *review granted* (Minn., June 30, 1997) (slip op. at 6). In addition, the court held that the reliability of the informant was adequately established. *Id.* at 7.

As she did at the court of appeals, Souto now challenges the probable cause determination on three grounds: (1) that the affidavit contained no information indicating that any contraband or evidence of a crime would be found at a residence, (2) that the information contained in the affidavit was "stale,"

and (3) that the informant's reliability was not adequately established.

■■■ Our review of a district court's probable cause determination is limited, with great deference afforded to the issuing court. *State v. Wiley*, 366 N.W.2d 265, 268 (Minn. 1985) (*citing Illinois v. Gates*, 462 U.S. 213, 236, 103 S.Ct. 2317, 2331, 76 L.Ed.2d 527 (1983)). Rather than considering the issue *de novo*, this court's task on appeal is to "ensure that the issuing judge had a 'substantial basis' for concluding that probable cause existed." *State v. Zanter*, 535 N.W.2d 624, 633 (Minn.1995). Furthermore, we have previously held that our consideration is limited to the information presented in the affidavit, rather than to the information actually possessed by the police. *Novak v. State*, 349 N.W.2d 830, 831 (Minn.1984).

■■■ To determine whether the issuing court had a substantial basis for finding probable cause to search Souto's apartment, we look to the "totality of the circumstances" test for probable cause promulgated by the Supreme Court in *Gates:*

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

462 U.S. at 238, 103 S.Ct. at 2332. Elements bearing on this probability include information linking the crime to the place to be searched and the freshness of the information. *See* 2 Wayne R. LaFave, *Search and Seizure*, § 3.7(d) (3d ed.1996) at 372. The reliability of the source of the information also bears on the likelihood that evidence will be found at the place searched. *Gates*, 462 U.S. at 238, 103 S.Ct. at 2332.

This court has historically required a direct connection, or nexus, between the alleged crime and the particular place to be searched, particularly in cases involving the

---

1. While the affidavit does not list a street address for the St. Hilaire residence, it describes the house by its color and design and provides infor-

mation as to its location relative to other easily identified buildings in the small town.

search of a residence for evidence of drug activity. *See, e.g., State v. Cavegn,* 356 N.W.2d 671, 674 (Minn.1984) (holding that clear "object-place nexus" between drug dealing and residence searched was established by the fact that the sale actually occurred at the residence); *State v. Braasch,* 316 N.W.2d 577, 578–79 (Minn.1982) (establishing direct connection to residence when suspect was seen to enter her residence shortly after picking up package authorities knew to contain drugs); *State v. Yaritz,* 287 N.W.2d 13, 15 (Minn.1979) (concluding that sufficient nexus to residence was established because, immediately after the defendant arranged a sale of drugs by telephone, he went straight from his home to the sale).

Citing *Novak,* the state argues that we have now abandoned this strict nexus standard for cases involving drug dealers and their residences. Such an exception to the nexus requirement for drug-related cases has apparently been adopted in some other jurisdictions, which now allow the necessary connection to be demonstrated "on the basis of the affiant-officer's experience that drug dealers ordinarily keep their supply, records and monetary profits at home." 2 LaFave, *Search and Seizure,* § 3.7(d) at 379. In *Novak,* the state argues, this court attached considerable significance to information in the affidavit indicating that the defendant was a "drug wholesaler" who dealt in large quantities in holding that there was probable cause to search the defendant's residence following his arrest on the highway for distribution of controlled substances. *Id.,* 349 N.W.2d at 832–833.

The evidence in the affidavit purporting to establish that Souto was a drug trafficker likely to have drugs or information pertaining to drug deals is summarized as follows: 1) that approximately ten months prior to the execution of the search warrant, a package containing drugs was mailed from Carmichael, California, addressed to Souto at her Thief River Falls residence, although Souto never actually received the package; 2) that an informant stated that suspected drug

dealer Heinrichs received his methamphetamine in packages that were mailed to his friends from a woman in the Sacramento, California area; 3) that at parties occurring more than six months prior to the execution of the search warrant, Souto had used drugs that were supplied by a certain confidential informant or his friends, and that she had once purchased a small amount of methamphetamine from the same informant; 4) that there were "numerous" phone calls between Souto's residence and the Heinrichs/Toppen residence "during the last year"; and 5) that the affiant "kn[ew] through information" received from informants and law enforcement officers that Souto was involved in the wide-scale possession and/or distribution of methamphetamine and/or marijuana.

These assertions fall significantly short of the facts that led us to uphold a search of the home of a "drug wholesaler" in *Novak.* In that case, the affidavit in question recited that police had recorded the defendant's telephone conversation from his home to an undercover narcotics agent; during the conversation, Novak agreed to deliver six pounds of marijuana to the agent. *Novak,* 349 N.W.2d at 832. Shortly thereafter, police observed him leaving his home to drive to the drug deal, at which point he was arrested. *Id.* The warranted search of his home was conducted later on the day of his arrest. *Id.*[2]

In contrast, the affidavit at issue here did not indicate that Souto ever arranged drug deals, sold, or distributed drugs, much less that she performed such acts from her home. Rather, the only direct connection to a drug supply is the package mailed to Souto, which she never received. Furthermore, the location to which the package was addressed had ceased to be Souto's residence some seven months before the affidavit was made and the search warrant itself was directed to a building in St. Hilaire, although the affidavit does not even assert that the St. Hilaire building is Souto's home. The officer's statements that Souto *did not receive drugs* directed to her residence in Thief River Falls

---

**2.** While we did say in *Novak* that "we attach[ed] considerable significance to the information indicating that petitioner was a drug wholesaler," 349 N.W.2d at 832, the statement is made in reference to the detailed description of large

scale drug sales supplied by the affidavit supporting the warrant. For this reason, we reject the state's argument that *Novak* represents a departure from our previous jurisprudence on the nexus requirement.

can in no way support an inference that she *was dealing drugs* from her home in St. Hilaire.

Further, neither the phone calls between Souto's home and that of Heinrichs, nor her previous use or purchase of methamphetamine at locations away from her home, provide the necessary nexus. The phone calls between the Souto residence and the Heinrichs residence fail to establish that Souto was part of Heinrichs' drug distribution network because there is no evidence of the substance of the conversations or the identities of the callers. *See generally State v. Gabbert*, 411 N.W.2d 209 (Minn.App.1987) (holding that information in affidavits, including long distance calls between drug dealer and suspect's residence and insufficiently corroborated anonymous tip, failed to establish probable cause to search suspect's residence). Souto's previous use and purchase of a controlled substance at locations removed from her house certainly were evidence of a crime, but no evidence whatsoever of criminal activity linked to her home.

■ Finally, the officer's statement that "he [knew]" that Souto was involved in the possession and/or distribution of drugs on a wide scale was too vague and conclusory to bolster the state's position that Souto was a drug dealer. In *State v. Doyle*, 336 N.W.2d 247, 251 (Minn.1983), we held that the value of the affiant's statement that he knew that the defendant had been dealing drugs for a number of years was diminished because of its conclusory nature and its failure to indicate the source of the information. Similarly, here, the statement lacks value because the officer did not provide any details of the information he received that would permit the issuing magistrate to independently evaluate his conclusion that Souto was a drug dealer. *Cf. United States v. Martin*, 866 F.2d 972, 976–77 (8th Cir.1989) (holding that affidavit contained sufficient facts regarding the defendant's behavior that the magistrate judge could independently make a probable cause determination despite conclusory statement that defendant was "casing" a drug store).

We find further support for our analysis in a case recently decided by the Kansas Supreme Court, *State v. Longbine*, 257 Kan. 713, 896 P.2d 367 (1995). In *Longbine*, a police affidavit in support of a warrant application to search the defendant's residence described the interception of a number of phone calls between a suspected drug dealer and the defendant discussing drug deals, and also stated that the suspected drug dealer was believed to store marijuana at the residences of his associates. *Id.*, 896 P.2d at 371. The affidavit did not name Longbine as one of these associates. *Id.*, 896 P.2d at 372. The Kansas Supreme Court held that the telephone calls merely gave the appearance that the defendant was part of the drug dealer's network and, without more information, there was no substantial basis for believing that drugs would be found at the defendant's residence. *Id.*, 896 P.2d at 371–2.

Here, there is even less: although the affidavit describes numerous phone calls between Souto's residence and Heinrichs' residence, there is no information as to their content, as there was in *Longbine*. Further, although the state argues that the mailing of a package containing drugs to Souto's residence gave the appearance that she was part of Heinrichs' drug ring, as in *Longbine*, there is no substantive information indicating that Souto in fact received and stored drugs for Heinrichs at her home. In fact, the affidavit contained information contradicting this conclusion; Souto went to the informant, who had purchased a larger amount of the drug from Heinrichs, to purchase a small amount of methamphetamine and, although she used drugs at the informant's parties, Souto was not one of the named persons who supplied the drugs.

■ Considering the information in the affidavit as a whole, we hold that it fails to establish a sufficient nexus between any purported drug dealing in the Pennington County area and Souto's home. When the request of the court is for the issuance of a warrant to search a particular location, there must be specific facts to establish a direct connection between the alleged criminal activity and the site to be searched. Here no such direct connection is established.

■ Not only did the search warrant application fail to establish a nexus between Souto's casual drug use, much less any drug

dealing, and her home, but the information upon which it relied was stale. "[T]he proof must be of facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time." *Sgro v. United States*, 287 U.S. 206, 210, 53 S.Ct. 138, 140, 77 L.Ed. 260 (1932). Factors relating to staleness include whether there is any indication of ongoing criminal activity, whether the articles sought are innocuous or incriminating, whether the property sought is easily disposable or transferable, and whether the items sought are of enduring utility. *State v. DeWald*, 463 N.W.2d 741, 746 (Minn. 1990).

In this case, the time lapse between the events related in the affidavit and the search warrant application is substantial. At the time of the search warrant application, it had been over six months since Souto's reported purchase of less than an ounce of methamphetamine and since the last reported drug party. Approximately 10 months had transpired since the attempted delivery of the package containing a controlled substance, and the attempted delivery was to a location other than the one to be searched.

■ Nevertheless, the state argues that the information supporting the search warrant was not stale because Souto was involved in an ongoing drug organization. When an activity is of an ongoing, protracted nature, the passage of time is less significant. 2 LaFave, *Search and Seizure*, § 3.7(a) at 344–46. The state highlights the information in the affidavit indicating that numerous phone calls were made and received between the Souto and Heinrichs residences during the prior year to underscore the ongoing nature of the activity. Furthermore, the state argues that the information was not stale because the warrant sought items of enduring utility likely to be innocuous on their face, such as telephone numbers and other records, in addition to more perishable and incriminating items, such as drugs and paraphernalia.

However, just as we determined that the search warrant application, taken as a whole, failed to establish that Souto was a drug dealer, we likewise reject the argument that the application established that she was part of an ongoing criminal conspiracy. Moreover, even in cases of an ongoing enterprise, evidence of more than generally suspicious activities is necessary to show continuation of the activity after a significant period of time has elapsed. *See* 2 LaFave, *Search and Seizure*, § 3.7(a) at 347. Considering the ten months that elapsed between the attempted delivery of the package and the execution of the search warrant, mere telephone calls were inadequate to show the continuation of a drug trafficking conspiracy, especially when the dates of the calls, the identities of the callers, and the substance of the calls were unknown. Given the staleness of the information contained in the search warrant application and its failure to establish that Souto was part of a drug ring, there was no probable cause to believe that drugs or evidence of drug crimes would be found at Souto's residence at the time it was searched.

■ Finally, Souto raises an issue regarding the reliability of the informant. In determining probable cause, the magistrate must consider the "veracity" and "basis of knowledge" of persons supplying hearsay information. *Gates*, 462 U.S. at 238, 103 S.Ct. at 2332. All of the facts relating to the informant should be considered in weighing reliability. *State v. McCloskey*, 453 N.W.2d 700, 703 (Minn.1990). Souto argues that the affidavit does not contain sufficient information regarding the informant's accuracy and credibility to support the search warrant, especially in light of the informant's admitted participation in drug trafficking. *See McCloskey*, 453 N.W.2d at 703 (individual who admitted purchasing marijuana from suspect not entitled to the presumption of honesty given to a citizen informer).

■ However, we hold that the informant's reliability was satisfactorily established. The affidavit provides that information provided by the informant was corroborated by a special agent in Grand Forks. Additionally, the informant met with Agent Woolever face-to-face and made admissions against his own interest to police officers. This type of meeting bolsters the credibility of the informant because the police then know the informant's identity and because the statement against interest implicates the informant

as much as the suspect. *See McCloskey,* 453 N.W.2d at 703–04.

In sum, despite the great deference we afford to the issuing court's determination of probable cause, we hold that the search warrant application, taken as a whole, does not contain sufficient information to support a probable cause determination that there would be evidence of drugs or drug dealing at the St. Hilaire residence at the time the search warrant was signed. The warrant failed to establish the necessary nexus between the crime alleged and Souto's home. Further, there was no evidence that Souto was a "drug wholesaler" such that a nexus to her residence could be presumed. Additionally, as in *Longbine,* there was no evidence beyond a superficial appearance that Souto was involved in an ongoing criminal enterprise. Without establishing an ongoing activity and without establishing that Souto was a drug dealer, there was little reason to believe that Souto would have enduring records relating to drug dealing and the information relating to drugs was too old to support the issuance of the search warrant.

Accordingly, we reverse the court of appeals and order that Souto's conviction for fifth degree controlled substance crime be vacated.[3]

STRINGER, Justice (dissenting).

A neutral magistrate is entitled to broad deference in our review of a probable cause determination and "the resolution of doubtful or marginal cases should be 'largely determined by the preference to be accorded warrants.'" *State v. Wiley,* 366 N.W.2d 265, 268 (Minn.1985) (quoting *Massachusetts v. Upton,* 466 U.S. 727, 734, 104 S.Ct. 2085, 2089, 80 L.Ed.2d 721 (1984). The magistrate must consider the totality of the circumstances. *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). I believe that the search warrant was adequately supported given the information relied upon and the circumstances of the large scale investigation. I therefore dissent.

Here the judge had multiple indicia of criminal conduct: Souto was a known drug user and a drug purchaser; the police intercepted a package containing drugs addressed to Souto; the package was mailed from Carmichael, California—near Sacramento, a city from which Heinrich was known to have received drugs; a series of telephone calls took place between Souto and Heinrich, a known drug dealer; and "information received from Federal, State and local law enforcement officers and a number of Confidential Reliable Informants [indicated that Souto was] involved in the possession and/or distribution of methamphetamine, and/or marijuana on a wide scale."

Because the target of the warrant was evidence of drug dealing such as customer lists, paraphernalia, or money—not just drugs, which tend to have a more temporary existence—the circumstances set forth in the affidavit are not fatally stale. It is also significant that this warrant was part of a county-wide investigation that had been underway for several months, implicating numerous people with varying levels of involvement in drug trafficking. Further, the complexity, breadth and nature of the larger drug investigation would suggest that delays may have been necessary to effectuate the timing of the various investigatory activities and arrests made in the scope of the broader investigation. I would conclude that the nexus between Souto and her home was sufficient in this context.

Given the totality of the circumstances, I do not believe that the trial court erred in issuing the search warrant.

---

3. We decline to address the issue of whether there is a "good faith" exception to the exclusionary rule under the Minnesota Constitution, raised by the state for the first time on appeal, because it was not adequately addressed below.