STRAS, Justice
(dissenting).
This case requires us to determine when, and under what circumstances, police officers have probable cause to perform a chemical test for the presence of controlled substances when they have reason to suspect a driver is under the influence of alcohol. Because the warrant application established probable cause only for the presence of alcohol in Debra Faw-cett’s blood, not the presence of a controlled substance, I respectfully dissent from the court’s conclusion that the search conducted in this case was reasonable under the Fourth Amendment to the United States Constitution. .
I.
By proceeding through a red light, Faw-cett drove her vehicle into the path of L.S.’s vehicle. The two vehicles collided, which caused both drivers to sustain injuries. When police officers arrived on the scene and began questioning the participants and witnesses, one of the officers detected alcohol on Fawcett’s breath. Fawcett-admitted that she had consumed "two to three beers” earlier that day. While Fawcett was in the ambulance receiving treatment for her injuries, an officer recited the - implied-consent advisory and-asked her to take a test to determine if she was “under the influence of alcohol.” He also informed her that he had probable cause to believe that she had “violated the criminal- vehicular homicide or injury laws,” which meant that a chemical test would be taken “with or without [her] consent.’’ No chemical test was administered at that time.
After Fawcett was transported to the hospital, another officer completed-an application for a search warrant accompanied by an affidavit. Nothing in the .affidavit suggested that Fawcett was under the influence of anything other than alcohol. In fact, the affidavit specifically stated that “officers [had] formed the belief that ... Fawcett was ... under the influence of alcohol” because “Fawcett admitted to responding officers that she had two or three drinks just prior to the crash, she smelled of an alcoholic beverage[,] and it was apparent to officers on-scene that she had been drinking.” The judge issued a warrant that allowed a “blood sample to be taken from [Fawcett] at Mercy Hospital” and forwarded “to an approved lab for testing.” The warrant was silent on the specific types of tests that law enforcement could conduct on the blood sample.
One month later, the Bureau of Criminal Apprehension (“BCA”) reported that there was no ethyl alcohol in' Fawcett’s blood sample, but that “additional toxicology reports) [would] follow.” A-second BCA report indicated that Fawcett’s blood sample contained Alprazolam, a prescription medication, and a metabolite of tetrahy-drocannabinol (“THC”), an active ingredient of marijuana. An officer then obtained a search warrant for any records with the name “Debra Lee Fawcett” in Minnesota’s Prescription Monitoring Program. The search revealed that Fawcett had a valid prescription for Alprazolam at the time of the accident.
. The State subsequently filed a criminal complaint against Fawcett alleging that she had committed criminal yehicular operation. Minn.Stat. § .609.21, subd. l(2)(ii) (2012) (making it a crime to cause injury to another while operating a motor vehicle in a negligent manner while under the influence of a controlled substance). The State’s theory of the case was that Faw- *389 cett’s combined use of THC and Alprazo-lam, both controlled substances, violated the criminalrvehicular-operation statute.
After the State filed the complaint, Faw-cett filed a motion to suppress “[a]ll evidence of the presence of drugs.” The district court granted Fawcett’s motion, concluding as relevant here that, under the Fourth Amendment, there was no probable cause to search Fawcett’s blood for the presence of controlled substances. The court of appeals reversed, holding that Fawcett did not have a reasonable expectation of privacy in the contents of her blood sample after it was seized by law enforcement for testing under a search warrant. State v. Fawcett, 877 N.W.2d 555, 561-62 (Minn.App.2016).
ÍL
I agree with the court that a search warrant that authorizes law enforcement to seize and test a person’s blood for intoxicants does not wipe out a person’s reasonable expectation that law enforcement will not test the blood sample for other purposes. The permissible extent of the invasion is tied to the scope of the warrant. See Horton v. California, 496 U.S. 128, 140, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990) (“If the scope of the search exceeds that permitted by the terms of a validly issued warrant ..., the subsequent seizure is unconstitutional without more.”).[1]
But I disagree with the court’s conclusion that probable causé to search for alcohol in a driver’s blood necessarily provides the police with probable cause to search for drugs. It is not clear how the court reaches this conclusion, other than the inferences it draws from the affidavit that lead it to conclude, that the issuing judge must have found that there was probable cause to search for “intoxicants, whether alcohol, controlled substances, or a combination of alcohol and controlled substances.”
The most serious problem with the court’s conclusion is that the affidavit is devoid of specific facts that could have led the issuing judge to conclude that probable cause existed to test Fawcett’s blood for the presence of controlled substances. Nothing, about Fawcett’s - demeanor, actions, or words suggested that the accident occurred because she was under the influence of a-controlled- substance. The affidavit did not describe any abnormal physical characteristics, comment on Fawcett’s ability to converse with the officers, or note any other behavior that would have given reason to believe that Fawcett was under the influence of another substance in addition to alcohol. To the contrary, two of the facts explicitly relied upon by this *390 court — the smell of alcohol on Fawcett’s breath and the admission that she had been drinking prior to the accident — point exclusively to alcohol as the cause of the accident. In fact, the affidavit specifically states that the “officers formed the belief’ that Fawcett was “under the influence of alcohol” at the time of the collision.[2] The court asserts that the two remaining facts — the injuries suffered by L.S. and the observation that Fawcett ran a red light — support its conclusion that probable cause to search for controlled substances existed, but the court seems to assume the connection rather than explain it.[3]
The court also seems to suggest that the affidavit was sufficient because it stated that law enforcement sought “evidence of the crime of criminal vehicular operation/homicide,” which can be committed when an individual is driving under the influence of alcohol, controlled substances, or both. See Minn.Stat. § 609.21, subd. 1(2) (2012). The fact that the affidavit generically references the suspected crime is of little assistance, however, because it reflects only the legal conclusion of the officers and is therefore, at best, “vague and conelusory.” See State v. Souto, 578 N.W.2d 744, 749 (Minn.1998) (holding that the statement in an affidavit that the suspect was involved “in the possession and/or distribution of drugs on a wide scale” was too conelusory to provide support for a search warrant). As the Supreme Court has made clear, “[sjufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others.” Illinois v. Gates, 462 U.S. 218, 239, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).
On this record, therefore, I would conclude that the search-warrant application and accompanying affidavit failed to establish probable cause for the search of Faw-cett’s blood for controlled substances. I therefore respectfully dissent from Part I of the court’s opinion.
III.
The court’s faulty probable-cause analysis, however, may simply be a product of the arguments of the parties, including the State, which asks us to uphold the search under the wrong branch of Fourth Amendment law. The parties present the question as one of probable cause, but the Supreme Court has recognized that, in *391 certain circumstances, the good-faith exception does not require the suppression of evidence when law enforcement, without engaging in misconduct, proceeds under a defective search warrant. See United States v. Leon, 468 U.S. 897, 915-16, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984); State v. Brooks, 838 N.W.2d 563, 574 (Minn.2013) (Stras, J., concurring). The facts of this case, in particular, suggest that the officers may have relied in good faith on what turned out to be a facially valid, yet constitutionally defective, search warrant, which did not place a limit on the types of tests that law enforcement .could conduct on Fawcett’s blood sample.[4] See Leon, 468 U.S. at 922, 104 S.Ct. 3405. Rather than unnaturally stretching the concept of probable cause, as I believe the court does here, in an appropriate case and under the right set of facts, I would be open to considering whether to adopt the good-faith exception in full. See State v. Lindquist, 869 N.W.2d 863, 876 (Minn.2015) (“[T]he good-faith exception adopted here applies only when law enforcement officers act pursuant to binding appellate precedent.” (emphasis added)).
LILLEHAUG, Justice
(dissenting).
I join Parts I and II of Justice Stras’ dissenting opinion. The search-warrant application and affidavit, on their face, failed to establish probable cause for the search of appellant’s blood for controlled substances.
I do not join Part III of Justice Stras’ dissent. Justice Stras uses Part III to announce his interest in an issue not raised by the parties and thus not before us; whether the so-called good-faith exception to the exclusionary rule should be expanded.
Although I disagree with Part III, Justice Stras appropriately makes clear (in italics) that, under State v. Lindquist, 869 N.W.2d 863 (Minn.2015), the exception applies only when officers act pursuant to binding appellate precedent. Lindquist did not adopt United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), and its progeny, but rather recognized only a “narrow[ ]” exception that was “a small fragment of federal good-faith jurisprudence,” 869 N.W.2d at 876.
HUDSON, Justice
(dissenting).
I join in the dissent of Justice Lillehaug.

.. For example, if a validly issued warrant permits the State to test a person's blood for the presence of alcohol, the State cannot unilaterally decide to test the blood sample in ways not contemplated by the warrant, such as testing for HIV or to establish a DNA profile for a criminal database. See Skinner v. Ry. Labor Execs' Ass'n, 489 U.S. 602, 617, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989) (“It is not disputed, however, that chemical analysis of urine, like that of blood, can reveal a host of private medical facts about [a person], including whether he or she is epileptic, pregnant, or diabetic."). This is a corollary of the principle that law enforcement may not obtain a search warrant for a specified item and then search'in places where the specified item cannot be found, such as looking for a stoleautomobile in a suspect’s closet. See Coolidge v. New Hampshire, 403 U.S. 443, 517, 91 S.Ct, 2022, 29 L.Ed.2d 564 (1971) ("Police with a warrant for a rifle may search only places where rifles might be and must terminate the search once the rifle is found.”); see also United States v, Ross, 456 U.S. 798, 824, 102 S.Ct. 2157, 72 L,Ed.2d 572 (1982) ("probable cause to believe that a stolen lawnmower may be found in a garage will not support a warrant, to search an upstairs bedroom,").

. The court contends that the issuing judge is not bound by the inferences drawn by the officers, and as a result, it does not matter that the officers believed that Fawcett was only under the influence of alcohol at the time of the collision. , It may be true that the issuing judge is not bound by the inferences of the officers, but the Fourth Amendment still requires the facts alleged in a search-warrant application to establish a fair probability that the evidence being sought will be found at a particular location. See State v. Wiley, 366 N.W.2d 265, 268 (Minn.1985). The court has not said why facts suggesting that Fawcett negligently operated her vehicle while under the influence of alcohol also provide reason to believe that controlled substances would be found in her blood. In essence, the court has reached the unsupported conclusion that, if there is a fair probability that a person has recently used alcohol, there is a fair probability that the person has used drugs as well.

. The court relies on State v. Paul, 548 N.W.2d 260 (Minn.1996), to support its view that Fawcett’s driving conduct created probable cause to believe that she was under the influence of a controlled substance. This prototypical drunk-driving case, however, does not support the court’s conclusion. There, we concluded, consistent with my view of the record in this case, that the suspect’s erratic driving behavior, in combination with other observed facts such as the smell of alcohol on the suspect’s breath, supported a finding of . probable cause to test for alcohol intoxication. See Paul, 548 N.W.2d at 264. Paul simply does not mention or consider other intoxicating substances.

. Justice Lillehaug’s dissent misses the point of this discussion of the good-faith exception. The point is not that the State should benefit from a rule that it never invoked. It should not. Rather, it is that the facts of this case present the precise situation in which courts evaluate a search under the good-faith exception. In fact, this case is so similar to Leon, the seminal good-faith-exception case, that there is little to distinguish them. As in Leon,, the officers here acted under a warrant issued by a "neutral and detached” magistrate; there is no evidence that any officers were dishonest or reckless in preparing the application and affidavit; and the officers acted in accordance with a facially valid, yet constitutionally defective, warrant that lacked probable cause for the search conducted. 468 U.S. at 919-20, 104 S.Ct. 3405. Under these facts, examining the possible applicability of the good-faith exception, not stretching the concept of probable cause, would have been the proper line of analysis for determining whether to suppress the evidence.