*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-0221**

State of Minnesota,
Respondent,

vs.

Nicholas James Gould,
Appellant.

**Filed April 15, 2024**
**Affirmed**
**Schmidt, Judge**

Anoka County District Court
File No. 02-CR-21-1475

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Brad Johnson, Anoka County Attorney, Robert I. Yount, Assistant County Attorney, Anoka, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Julie L. Nelson, St. Paul, Minnesota (for appellant)

Considered and decided by Wheelock, Presiding Judge; Schmidt, Judge; and Kirk, Judge.*

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**NONPRECEDENTIAL OPINION**

**SCHMIDT**, Judge

Appellant challenges his conviction of first-degree sale of a controlled substance, arguing the evidence obtained through a search of his hotel room should have been suppressed because the search warrant lacked probable cause. Because the search warrant was supported by probable cause under the totality of the circumstances, we affirm.

**FACTS**

In March 2021, Sherburne County law enforcement officers received information from confidential reliable informants (CRIs) that appellant Nicholas James Gould possessed controlled substances. The first CRI (CRI-1) told an investigator that CRI-1 had arranged to buy methamphetamine from Gould and could purchase one ounce of methamphetamine for $500. The second CRI (CRI-2) told a detective that CRI-2 knew "Nick Gould" drove a "newer" white Ford Explorer and that Gould was staying in room 103 at the Comfort Suites in Ramsey, Minnesota. CRI-2 stated that CRI-2 had seen Gould in possession of a "large amount" of heroin in room 103. CRI-2 also told the detective that CRI-2 had purchased methamphetamine from Gould.

CRI-1 received consideration for the information provided to the investigator, CRI-2 did not. The investigator and detective vouched for the CRIs' credibility based on their experience in having used the CRIs in prior investigations and their having provided "beneficial, true, and accurate" information that law enforcement confirmed in previous cases.

*Law enforcement corroboration*

Based on the information provided by the CRIs, the investigator checked the Sherburne County Sheriff's Office records management system and found that "Nicholas James Gould" lived in Anoka. The investigator also searched Minnesota's public criminal records database and learned that Gould had five prior convictions: three controlled-substance offenses, one threats of violence offense, and one driving while impaired offense.

The investigator conducted surveillance and observed Gould come out of the hotel room at the Comfort Suites and enter the driver's side of a white 2016 Ford Explorer. The investigator took photographs and collected swabs from the vehicle's front door handles. A forensic analysis of the swabs revealed the presence of methamphetamine.

*Search warrant application*

Based on the information provided by the CRIs, the investigator's own observations of Gould at the hotel, and the drug-swab results, the investigator applied for a search warrant for Gould's person, Gould's Ford Explorer, and room 103 at the Comfort Suites. The search warrant noted that the investigator believed "[c]ontrolled substances including but not limited to methamphetamine, heroin, cocaine, and THC," drug paraphernalia, and items associated with the sale of controlled substances would be found. A district court judge reviewed the investigator's application and issued the warrant.

When preparing to execute the warrant, a surveillance team reported that Gould's vehicle had left the hotel. Based upon the investigator's request, officers stopped the Ford Explorer and identified Gould as the driver. In searching the vehicle, officers found what they suspected to be methamphetamine, fentanyl or heroin, and drug paraphernalia.

3

Officers also executed the search warrant of Gould's hotel room and observed, in plain sight, numerous items of drug paraphernalia, items associated with drug sales, and .22 grams of methamphetamine. Officers also observed a motorcycle in the hotel room and, upon removal of the motorcycle seat, recovered a stack of twenty-dollar bills totaling $9,920 and a canvas pouch containing various amounts of controlled substances, including fentanyl, methamphetamine, cocaine, and heroin.

*Criminal charges, conviction, and sentence*

Respondent State of Minnesota filed charges against Gould for first- and second-degree sale of controlled substances. The state later added two additional charges of first-degree sale of a controlled substance, a charge of second-degree sale or possession of a controlled substance, and a charge of receiving stolen property.

Gould moved to suppress the evidence found in his hotel room, arguing that the warrant was not supported by probable cause because the information provided by CRI-1 was vague, unreliable, and stale. The district court denied the motion, finding that probable cause supported the search warrant because Gould's arguments failed to account for "the information provided by CRI-2 in the search warrant application, and the investigator's own observation of [Gould] and the positive drug swab of" Gould's vehicle. Before trial, the state dismissed the receiving-stolen-property charge. A jury found Gould guilty on all five remaining counts. The district court sentenced Gould to 105 months in prison.

Gould appealed from his conviction. This court granted Gould's motion to stay his appeal and remand to district court for postconviction proceedings. This court later granted Gould's motion to dissolve the stay and reinstate his appeal.

4

**DECISION**

Gould argues that the warrant for his hotel room lacked probable cause because police did not sufficiently corroborate the CRIs' information, and the warrant lacked a nexus between the suspected crime and the place to be searched.[1]

Warrants must be issued only upon a finding of probable cause. U.S. Const. amend. IV; Minn. Const. art. I, § 10. To determine whether a warrant is supported by probable cause, this court reviews whether "the issuing judge had a substantial basis for concluding that probable cause existed." *State v. Zanter*, 535 N.W.2d 624, 633 (Minn. 1995) (quotation omitted). Issuing courts must "make a practical, common-sense decision, whether, given all the circumstances set forth in the affidavit . . . , there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

Reviewing courts afford great deference to the judge's determination to issue the warrant. *State v. Souto*, 578 N.W.2d 744, 747 (Minn. 1998). Our review is limited to ensuring "the issuing judge had a substantial basis for concluding that probable cause existed" based upon the officer's affidavit seeking the warrant. *Id.* (quotation marks omitted).

---

[1] Gould's argument related to the nexus between the crime charged and the place sought to be searched was not presented to the district court. We generally will not review issues raised for the first time on appeal. *Roby v. State*, 547 N.W.2d 354, 357 (Minn. 1996). But because both parties briefed this issue and it involves a legal question, we choose to address the issue. *See McKenzie v. State*, 872 N.W.2d 865, 872 (Minn. 2015) (explaining appellate courts may review a "previously unaddressed issue" when it involves a "legal question and the parties had an opportunity to brief the question").

**A.      The statements made by the CRIs were sufficiently corroborated.**

Gould argues police did not sufficiently corroborate the CRIs' information before obtaining a search warrant. Gould contends CRI-1 did not give a time, place, or description of Gould's activity or alleged drug sale operation, and police did not corroborate CRI-2's tip observing heroin in Gould's hotel room. We are not persuaded.

Gould argues the search warrant lacked probable cause because the investigator merely corroborated the "easily obtained" facts that Gould was staying at the Comfort Suites and that he drove a white Ford Explorer. Gould contends such corroboration was insufficient to establish probable cause. *See State v. Albrecht*, 465 N.W.2d 107, 109 (Minn. App. 1991) (holding that corroboration of "easily obtained" facts of an informant's tip does not, in itself, support a probable cause finding).

Gould's argument ignores the additional facts that the investigator collected before obtaining the search warrant. The inspector discovered that Gould had several prior drug-related convictions, including two drug-possession convictions and one drug-sales conviction. The investigator also observed Gould and a female "come out of the hotel room" at the Comfort Suites and enter a white Ford Explorer. She later swabbed the door handles of the vehicle, which tested positive for the presence of methamphetamine. Under the totality of these circumstances, police had probable cause and the district court appropriately issued the search warrant.

Gould insists that CRI-1's information is untrustworthy because CRI-1 had previously received consideration in exchange for giving officers information. This information was, however, put before the issuing judge who could fully access CRI-1's

6

credibility. In addition, CRI-2 did not receive consideration and informed police that CRI-2 had previously purchased methamphetamine from Gould. This information independently corroborated CRI-1's tip that CRI-1 had arranged to buy methamphetamine from Gould. Police further sufficiently corroborated both CRIs' information through their investigation, which included personal observations and the swab of Gould's vehicle.

Gould also argues that police should have verified the identity of the mutual friend of CRI-1 and Gould or attempted a controlled buy. But police were not required to do so. Instead, police simply needed to corroborate enough detail to "lend credence" to the CRIs' tips. *See State v. Wiley*, 366 N.W.2d 265, 269 (Minn. 1985). Based on law enforcement's corroboration of the CRIs' information, the issuing judge made a reasonable inference that Gould had controlled substances in his hotel room.

**B.      The information in the search warrant was not stale.**

Gould argues that CRI-1's information was stale because CRI-1 gave no time reference as to Gould's activity and that CRI-1's information could have been "a day prior, week prior, or a month prior." We are not persuaded.

A search warrant must not be based on stale information. *State v. Jannetta*, 355 N.W.2d 189, 193 (Minn. App. 1984), *rev. denied* (Minn. Jan. 14, 1985). It must rely on facts "closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time." *Souto*, 578 N.W.2d at 750. When assessing whether information is stale, we consider whether (1) there is ongoing criminal activity, (2) the items to be seized are "innocuous or incriminating," (3) the items are "easily disposable or transferable," and (4) the items "are of enduring utility." *Id.* Courts do not "set arbitrary

7

time limits in obtaining a warrant." *Janetta*, 355 N.W.2d at 193. Instead, appellate courts review the totality of the circumstances with "flexibility and common sense." *Id.*

The search warrant here stated that CRI-1 previously purchased methamphetamine from Gould on an unspecified date. Beyond CRI-1's information, the affidavit to obtain the search warrant also stated that CRI-2 had purchased methamphetamine from Gould and, within the previous 72 hours, CRI-2 had "personally observed [Gould] to be in possession of a large amount of [h]eroin." Officers also personally observed Gould exiting his room at the hotel and entering the vehicle that CRI-2 had described. The facts of the tips and law enforcement's surveillance are sufficiently close in time to the issuance of the warrant, such that the information was not stale. *See Souto*, 578 N.W.2d at 750.

## C. There was a nexus between the alleged criminal activity and place to be searched.

Gould argues the warrant lacked a sufficient nexus between the alleged crime of sale of controlled substances with the place that police sought to search. We disagree.

To satisfy the probable-cause standard, a search warrant must demonstrate "a direct connection, or nexus," between the alleged crime and the place to be searched. *Id.* at 747-48. The nexus requirement ensures "that there is a fair probability that the evidence will be found at the specific site to be searched." *State v. Yarbrough*, 841 N.W.2d 619, 622 (Minn. 2014). A "direct observation of evidence of a crime at the place to be searched is not required." *Id.* The issuing judge may infer a nexus between crime and the place to be searched from the totality of the circumstances, including factors such as the type of crime alleged, the nature of the items sought, and "the normal inferences as to where the

8

defendant would usually keep the items." *Id.* at 622-23; *see also State v. Cavegn*, 356 N.W.2d 671, 674 (Minn. 1984) (upholding warrant where totality of the circumstances showed drug sales being conducted at residence, which established clear nexus between drug dealing and residence to be searched); *State v. Bynum*, 579 N.W.2d 485, 487 (Minn. App. 1998) (affirming warrant based upon inference that defendant sold drugs from his automobile and kept drugs at his residence when police observed same vehicle at controlled buy and outside of defendant's house), *rev. denied* (Minn. Aug. 18, 1998).

Here, law enforcement's affidavit to obtain a warrant included the following information: CRI-1 reported that CRI-1 could presently purchase drugs from Gould, CRI-2 reported that CRI-2 recently purchased methamphetamine from Gould, and CRI-2 also reported that CRI-2 had observed Gould with a large amount of heroin and cash in room 103 of the Comfort Suites within the previous 72 hours. Officers verified that Gould had a criminal history of drug sales, observed Gould leave room 103 of the Comfort Suites, watched Gould enter his white Ford Explorer, and later found the presence of drugs on Gould's vehicle that was parked outside of the hotel. Based upon that information, the warrant demonstrated a fair probability that evidence of drugs or drug sales would be found in Gould's room at the Comfort Suites. *Yarbrough*, 841 N.W.2d at 622.

Gould analogizes this case to *Souto*, in which the supreme court concluded that an insufficient nexus existed between drug activity and the defendant's home. 578 N.W.2d at 748-49. In *Souto*, the court held the affidavit "did not indicate that [defendant] ever arranged drug deals, sold, or distributed drugs, much less that she performed such acts from her home." *Id.* at 748.

9

Unlike *Souto*, law enforcement's affidavit here contained sufficient information that provided a sufficient nexus to the crime under investigation and the place police sought to search. The affidavit notes that CRI-1 had been in contact with Gould and that he "could purchase one ounce of methamphetamine" from Gould for $500. The affidavit also notes that CRI-2 was "familiar with a male staying in room #103 at Comfort Suites" and CRI-2 observed Gould to be in possession of a large amount of heroin. The affidavit also stated CRI-2 provided information about Gould's vehicle, Gould storing drugs in his hotel room, and that CRI-2 had "previously purchased methamphetamine from [Gould] on multiple occasions." CRI-2 had also observed large amounts of heroin in Gould's hotel room within the past 72 hours. This detailed information from the affidavit distinguishes this case from *Souto*. Further, it established a fair probability that evidence of drug use and sales would be found in Gould's hotel room.

**Affirmed.**