STATE of Minnesota, Respondent,

v.

LaDream Hampton YARBROUGH,
Appellant.

No. A12–1872.

Supreme Court of Minnesota.

Jan. 8, 2014.

Rehearing Denied March 6, 2014.

Lori Swanson, Attorney General, Saint Paul, MN; and John J. Choi, Ramsey County Attorney, Thomas R. Ragatz, Assistant County Attorney, Saint Paul, MN, for respondent.

Mark D. Nyvold, Special Assistant State Public Defender, Fridley, MN, for appellant.

Cort C. Holten, Jeffrey D. Bores, Chestnut Cambronne PA, Minneapolis, MN, for amicus curiae Minnesota Police and Peace Officers Association Legal Defense Fund.

## OPINION

LILLEHAUG, Justice.

After appellant LaDream Hampton Yarbrough allegedly threatened a woman in a public park for stealing his drugs, police prepared a search warrant affidavit, obtained a warrant from a judge, and conducted a search of Yarbrough's Saint Paul residence. They seized gun and drug evidence. The question presented in this case is whether the search warrant affidavit established a sufficient nexus between Yarbrough's alleged criminal activity and the place to be searched. Because it did, we conclude that the issuing judge had a substantial basis to find probable cause that handgun and drug evidence would be found at Yarbrough's residence. We affirm.

## I.

On May 7, 2012, Yarbrough allegedly confronted a woman at a Saint Paul public park and accused her of stealing "a large amount" of his crack cocaine. Yarbrough brandished a silver handgun with a black grip to threaten her. Yarbrough then left the scene in a maroon Chevrolet Caprice bearing a specified Minnesota license plate number ending in "X." A woman drove the car.

Using databases, Saint Paul police officers discovered that Yarbrough and his female roommate lived in an apartment on West 7th Street. Officers observed the maroon Chevrolet Caprice with the specified license plate number parked at the rear of the apartment building. The vehicle was registered to Yarbrough's roommate at that address.

Officers also learned from a confidential reliable informant that Yarbrough was a known dealer of crack cocaine and carried a handgun. Yarbrough had been arrested on February 14, 2012, for possession of a controlled substance with intent to distribute. At the time of that arrest, Yarbrough's roommate was with him in the same maroon Chevrolet Caprice.

Based on this information, on May 10, 2012, officers applied for a warrant to search Yarbrough, the maroon Chevrolet Caprice, and the apartment. That same day, a Ramsey County judge issued the warrant. Among other things, the warrant authorized the officers to search the apartment for firearms, ammunition, papers showing control of the residence, and controlled substances.

The next day officers arrested Yarbrough. Then they executed the search warrant at the apartment. During the search, officers recovered a large amount of cash, a silver handgun with a black grip that was later determined to be stolen, ammunition, and drugs. The State charged Yarbrough in Ramsey County District Court with felony possession of cocaine, Minn.Stat. § 152.021, subd. 2(a)(1) (2012); felony possession of marijuana, Minn.Stat. § 152.025, subd. 2(a)(1) (2012);

and receipt of stolen property (the handgun), Minn.Stat. § 609.53, subd. 1 (2012).

Before trial, Yarbrough filed a written motion to suppress evidence, including evidence seized from the apartment. The district court granted Yarbrough's motion to suppress the evidence from the apartment on the ground that the search warrant affidavit failed to establish a sufficient nexus between Yarbrough's alleged criminal activity and the apartment.

Because the district court's order suppressing the gun and drug evidence from the apartment had a critical impact on the State's case, the State appealed. The Minnesota Court of Appeals reversed, stating that it was reasonable to infer that Yarbrough would keep at the apartment the handgun used in the May 7 confrontation. *State v. Yarbrough*, 828 N.W.2d 489, 493 (Minn.App.2013). The court of appeals therefore held that the handgun information in the search warrant affidavit established probable cause to search the apartment for gun evidence. *Id.* at 494. Without reaching the nexus issue regarding the drug information in the search warrant affidavit, the court of appeals applied the plain view doctrine and ruled that the drug evidence was admissible. *Id.* at 493 n. 1.

Yarbrough sought and we granted review. Relying heavily on language from our decision in *State v. Souto*, 578 N.W.2d 744 (Minn.1998), Yarbrough argues that the search warrant affidavit failed to establish a "direct connection," or nexus, between his alleged criminal activity and the place to be searched. Yarbrough also argues that the court of appeals erred by invoking the plain view doctrine when nei-

ther party had raised the issue in the district court or the court of appeals.

## II.

When reviewing a decision to issue a search warrant, our review is limited to whether the judge issuing the warrant had a "substantial basis" for concluding that probable cause existed. *State v. Jenkins*, 782 N.W.2d 211, 222–23 (Minn.2010).

### A.

Before searching a residence, police usually must obtain a valid warrant issued by a neutral and detached magistrate. *See State v. Harris*, 589 N.W.2d 782, 787 (Minn.1999). And a valid warrant must be supported by probable cause. U.S. Const. amend. IV; Minn. Const. art. I, § 10; Minn.Stat. § 626.08 (2012). Probable cause exists if the judge issuing a warrant determines that "there is a fair probability that contraband or evidence of a crime will be found." *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). The issuing judge's task is to make a practical, common-sense decision. *Id.*

Probable cause not only requires that the evidence sought likely exists, but also that there is a fair probability that the evidence will be found at the specific site to be searched. *State v. Gail*, 713 N.W.2d 851, 858 (Minn.2006). A sufficient "nexus" must be established between the evidence sought and the place to be searched. However, direct observation of evidence of a crime at the place to be searched is not required. *See Harris*, 589 N.W.2d at 788–89. A nexus may be inferred from the totality of the circumstances.[1] *Id.* at 790–

---

1. As Yarbrough notes correctly, our *Souto* decision frames the nexus requirement in terms of a "direct connection." 578 N.W.2d at 747–48. But a "direct connection" may be

established by inference. Indeed, *Souto's* "direct connection" language is followed by our recognition that the relevant evidence in that case could "in no way support an *inference*"

91; *see also State v. Wiley,* 295 Minn. 411, 417, 205 N.W.2d 667, 673 (1973). Among the circumstances the issuing judge—and our court on "substantial basis" review—considers in determining whether there is probable cause to believe that the evidence sought will be found at a particular place are the type of crime, the nature of the items sought, the extent of the defendant's opportunity for concealment, and the normal inferences as to where the defendant would usually keep the items. *State v. Pierce,* 358 N.W.2d 672, 673 (Minn.1984).

Regarding gun evidence, we have held that, depending on the circumstances, it is reasonable to infer that such evidence would be kept at a defendant's residence, thereby satisfying the nexus requirement. For example, in *Pierce,* we recognized that the normal place a defendant would keep extra bullets for a gun would be at home. 358 N.W.2d at 674. Likewise, in *Gail,* we held that it was reasonable to infer that a murder weapon would be found in the apartment where the defendant was arrested. 713 N.W.2d at 858–59.

 Regarding drug evidence, we have drawn a distinction between a "drug wholesaler" and a "casual user." *See Harris,* 589 N.W.2d at 789; *Novak v. State,* 349 N.W.2d 830, 832–33 (Minn.1984). It may be reasonable to infer that drug wholesalers keep drugs at their residences, but such an inference, without more, is unwarranted for casual users. *See Harris,* 589 N.W.2d at 789; *Novak,* 349 N.W.2d at 832–33.

### B.

 At the threshold, this is not a case in which police officers obtained a warrant

to search Yarbrough's residence simply because he was seen with a handgun away from his residence.[2] That would ordinarily not be enough to establish a nexus to search a residence. Accordingly, the court of appeals' statement below—"where the evidence in the search-warrant affidavit establishes that a defendant possessed a gun, it is common sense and reasonable to infer that the defendant would keep that gun at his residence"—is too broad. *See Yarbrough,* 828 N.W.2d at 493.

 By contrast, the judge issuing the search warrant here had a substantial factual basis for concluding that there was a fair probability that a handgun and ammunition would be found at Yarbrough's residence. The search warrant affidavit stated that Yarbrough not only made threats with a handgun in a public park, but fled the scene in a vehicle that was later parked at, and registered to a resident of, the apartment. The inference is that the vehicle's driver was Yarbrough's roommate. It was therefore reasonable to infer that Yarbrough or the driver would store the handgun at the apartment. *See Gail,* 713 N.W.2d at 859. These facts, in combination with the corresponding reasonable inferences, *see, e.g., Gail,* 713 N.W.2d at 858–59, established a substantial basis to believe that probable cause existed to search Yarbrough's residence for gun evidence.

 Whether the search warrant affidavit established a fair probability that drug evidence would be found at the apartment is a closer question. We hold that the search warrant affidavit, by three factual allegations, established a sufficient nexus between Yarbrough's drug activities

---

connecting defendant's criminal activity to the place to be searched. *Id.* at 748–49 (emphasis added).

2. Carrying a pistol in many public places is lawful pursuant to a permit to carry or when hunting or target shooting. Minn.Stat. § 624.714 (2012); *State v. Ndikum,* 815 N.W.2d 816, 821 (Minn.2012).

and the apartment. First, the affidavit stated that Yarbrough previously had been arrested for possession of a controlled substance with intent to distribute. The affidavit also stated that, according to a confidential reliable informant, Yarbrough was a crack cocaine dealer. Finally, the affidavit stated that Yarbrough had brandished a handgun on May 7, 2012, because someone had stolen "a large amount of crack cocaine from him." These three factual allegations were enough to explain that Yarbrough was a drug wholesaler under *Novak*. *See* 349 N.W.2d at 832–33. Thus, the issuing judge had a substantial basis to conclude that there was a fair probability that drug evidence would be found at the apartment.

Based on the totality of the circumstances, the search warrant affidavit established a substantial basis to believe that probable cause existed to search Yarbrough's residence for both gun evidence and drug evidence.[3]

Affirmed.

---

3. Because we conclude that the search warrant affidavit established a sufficient nexus between Yarbrough's criminal activity and his residence for both gun evidence and drug evidence, we need not and do not address the court of appeals' reliance on the plain view doctrine with respect to drug evidence.