*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-1711**

State of Minnesota,
Respondent,

vs.

Antanie Devon Johnson,
Appellant.

**Filed August 18, 2014
Affirmed
Schellhas, Judge**

Hennepin County District Court
File No. 27-CR-12-31350

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Michael Richardson, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Rachel F. Bond, Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Connolly, Presiding Judge; Peterson, Judge; and Schellhas, Judge.

## U N P U B L I S H E D   O P I N I O N

**SCHELLHAS**, Judge

        Appellant challenges the district court's denial of his suppression motion and admission of photographs found on his cellular phone. We affirm.

**FACTS**

Upon application of Hennepin County Deputy Sheriff Timothy Inglett, the district court issued a warrant to search the lower apartment at 406 Oliver Avenue North in Minneapolis for controlled substances and related paraphernalia, including firearms. Law-enforcement officers executed the warrant and found a loaded .40 caliber SIG Sauer P229 handgun in the crisper drawer of the lower apartment's refrigerator and a cellular phone in the bedroom. Respondent State of Minnesota charged appellant Antanie Johnson with being a prohibited person in possession of a firearm, in violation of Minn. Stat. § 624.713, subd. 1(2) (2012). Johnson moved to suppress the gun, arguing that the search was illegal because the warrant did not set forth sufficient facts to establish probable cause. The district court denied his motion, and Johnson proceeded to a jury trial. The jury found Johnson guilty, and the district court sentenced him.

This appeal follows.

**D E C I S I O N**

**I.**

Johnson first challenges the district court's denial of his suppression motion, arguing that the affidavit accompanying the search-warrant application was insufficient to establish probable cause. "When reviewing a decision to issue a search warrant, our review is limited to whether the judge issuing the warrant had a substantial basis for concluding that probable cause existed." *State v. Yarbrough*, 841 N.W.2d 619, 622 (Minn. 2014) (quotation omitted). "Probable cause exists if the judge issuing a warrant determines that there is a fair probability that contraband or evidence of a crime will be

found." *Id.* (quotation omitted). "The issuing judge's task is to make a practical, common-sense decision." *Id.*

In the affidavit supporting the search-warrant application, Deputy Inglett stated the following. He learned from a detective in the Hennepin County Sheriff's Office that a confidential informant (CI) provided information about an individual, known as "Peanut," who "sells controlled substances, to include marijuana, is always in possession of a .40 caliber Smith and Wesson firearm, claims to be a Gangster Disciple gang member, and drives a purple minivan with a white or silver stripe." The CI indicated that Peanut "resides at 406 Oliver Avenue North, in the City of Minneapolis, but was unsure if it was in the upper or the lower unit." The CI described Peanut "as a black male with caramel skin, standing approximately 5'7" tall, approximately 20–30 years of age, and having braided hair and tattoos." Minneapolis Police Department records revealed that a male identified as Antanie Devon Johnson, born May 30, 1975, resided at 406 Oliver Avenue North, Apartment 1, Lower, in Minneapolis, and used "Peanut" "as a moniker or street name." The police records showed that Johnson was "a confirmed member of the Men of Business (MOB)" and additionally confirmed that Johnson associated with the Black P. Stones and Gangster Disciples criminal gangs. Hennepin County Sheriff's Office records showed that Johnson "stands approximately 5'6" tall, has been photographed with braided hair, and has the following tattoos: Peanut Man, Big P-Nut, Big Peanut with Mr. Peanut Logo, Pitchfork, and Cane." The CI identified a photograph of Johnson as the person the CI knew to be selling controlled substances. Johnson's computerized criminal history revealed that Johnson has 2003 and 2007 convictions of

fifth-degree controlled-substance crime (possession) and possessed a firearm when arrested in 2003.

The supporting affidavit also provides that, while conducting surveillance, Deputy Inglett observed a purple minivan with a light-colored stripe at the Oliver Avenue address on several occasions. The minivan was registered to Amieka Evans, whom Johnson listed as his next-of-kin on a form completed at the Hennepin County Adult Detention Center. Johnson also listed his address on that form as 723 Newton Avenue North in Minneapolis. In the seven days before requesting the warrant, Deputy Inglett twice retrieved trash from the Oliver Avenue residence, once within 72 hours of requesting the warrant. The trash contained multiple plastic baggies filled with a substance that tested positive for the presence of marijuana, an empty box of plastic sandwich baggies, and loose tobacco or cigar packaging. In three trash retrievals from the Newton Avenue address in the seven days before requesting the search warrant, Deputy Inglett found multiple plastic baggies filled with a substance that tested positive for the presence of marijuana, rolling papers, and loose tobacco or cigar packaging. Deputy Inglett also found mail addressed to Johnson and to Amieka Evans. Based on his training and experience, Deputy Inglett stated that "individuals involved in the distribution of controlled substances often use firearms to protect their narcotics and/or proceeds derived from the sale of narcotics."

Johnson argues that the search-warrant affidavit fails to establish the veracity or basis of knowledge of the CI, whose tip triggered the police investigation of him and the Oliver Avenue residence. He asserts that the CI's tip was not reliable because the

4

affidavit contains "no allegation of first-hand, personal observations by the informant," citing *State v. Wiley*, 366 N.W.2d 265, 269 (Minn. 1985) ("Recent personal observation of incriminating conduct has traditionally been the preferred basis for an informant's knowledge."). We disagree. Basis of knowledge and veracity "should not be 'understood as entirely separate and independent requirements to be rigidly exacted in every case'" but instead "'as closely intertwined issues that may usefully illuminate the commonsense, practical question [of] whether there is 'probable cause' to believe that the contraband or evidence is located in a particular place.'" *State v. Holiday*, 749 N.W.2d 833, 840 (Minn. App. 2008) (quoting *Illinois v. Gates*, 462 U.S. 213, 230, 103 S. Ct. 2317, 2328 (1983)). "[T]he fact that police can corroborate part of the informer's tip as truthful may suggest that the entire tip is reliable." *State v. Siegfried*, 274 N.W.2d 113, 115 (Minn. 1978).

Johnson contends that police corroboration here was insufficient, citing *State v. Ross*, 676 N.W.2d 301 (Minn. App. 2004), and *State v. Cook*, 610 N.W.2d 664 (Minn. App. 2000), *review denied* (Minn. July 23, 2000). Johnson's reliance on these cases is misplaced, as neither involves a district court's review of a search warrant. *See Ross*, 676 N.W.2d at 303 (setting forth facts of case and discussing automobile exception to general requirement for search warrant); *Cook*, 610 N.W.2d at 666 (noting that police officer did not obtain warrant to search Cook's vehicle because he did not believe he had enough time). We conclude that the CI's tip, combined with the independent corroboration obtained by Deputy Inglett, was sufficient to conclude that, under the totality of the circumstances, a "fair probability" existed that "evidence of a crime" would be found in

the residence at 406 Oliver Avenue North. *See State v. Zanter*, 535 N.W.2d 624, 633 (Minn. 1995).

## II.

Johnson also argues that the search warrant lacks probable cause because it does not establish a sufficient nexus between the evidence police sought and the place they sought to search. "Probable cause not only requires that the evidence sought likely exists, but also that there is a fair probability that the evidence will be found at the specific site to be searched." *Yarbrough*, 841 N.W.2d at 622. "[D]irect observation of evidence of a crime at the place to be searched is not required." *Id*. A sufficient nexus between the evidence sought and the place to be searched "may be inferred from the totality of the circumstances." *Id.*

> Among the circumstances the issuing judge—and [an appellate] court on substantial basis review—considers in determining whether there is probable cause to believe that the evidence sought will be found at a particular place are the type of crime, the nature of the items sought, the extent of the defendant's opportunity for concealment, and the normal inferences as to where the defendant would usually keep the items.

*Id*. at 623 (quotation omitted).

Here, we conclude that the information contained in the affidavit established a sufficient nexus between the Oliver Avenue apartment and firearms. The district court therefore did not err by denying Johnson's suppression motion because the search warrant was supported by probable cause.

III.

Johnson maintains that the district court committed reversible error by admitting into evidence four pictures found on Johnson's cellular phone, along with testimony related to those photographs. The state offered the pictures and the district court admitted them without objection. Deputy Inglett testified that the black firearm in the third picture was a SIG Sauer handgun of a similar size and shape as the gun found in the refrigerator. Because the deputy could not ascertain from the photograph the serial number of the gun, the deputy was unable to opine that the gun in the photograph was the same as the gun that police found in the refrigerator. But Deputy Inglett testified that, when he interviewed Johnson, Johnson admitted that the pictures of the guns found on his phone were taken inside the Oliver Avenue residence, and Tiffany Shockency, who lived at the Oliver Avenue apartment with Johnson, testified that she had seen Johnson at the apartment with guns before execution of the search warrant.

We "review a district court's decision to admit evidence for an abuse of discretion." *State v. Diggins*, 836 N.W.2d 349, 357 (Minn. 2013). When a defendant fails to object to the admission of evidence, our review is under the plain-error standard. *See* Minn. R. Crim. P. 31.02 ("Plain error affecting a substantial right can be considered by the court . . . on appeal even if it was not brought to the trial court's attention."). To succeed under this standard, an appellant must show "(1) an error, (2) that the error is plain, and (3) that the plain error affects substantial rights." *State v. Dao Xiong*, 829 N.W.2d 391, 395 (Minn. 2013) (citing *State v. Griller*, 583 N.W.2d 736, 740 (Minn.

1998)). If these requirements are met, we then determine "whether the error must be addressed to ensure the fairness and integrity of the judicial proceedings." *Id.*

Johnson argues that the pictures were irrelevant and that their admission was therefore erroneous. We disagree. Evidence is relevant when it "ha[s] any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Minn. R. Evid. 401. "A fact is relevant if, when taken alone or in connection of other facts, [it] warrants a jury in drawing a logical inference assisting, even though remotely, the determination of the issue in question." *State v. Schulz*, 691 N.W.2d 474, 478 (Minn. 2005). Johnson's cellular-phone photographs, which included photos taken inside the Oliver Avenue apartment of a gun of a similar size and style as the gun that police found in the refrigerator, were probative of whether Johnson possessed the gun that police found in the refrigerator. The photos therefore were relevant to whether Johnson possessed the gun found in the refrigerator.

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." Minn. R. Evid. 403. "[U]nfair prejudice is not merely damaging evidence, even severely damaging evidence; rather, unfair prejudice is evidence that persuades by illegitimate means, giving one party an unfair advantage." *State v. Bell*, 719 N.W.2d 635, 641 (Minn. 2006) (quotation omitted). Rule 403 favors the admission of relevant evidence. *Schulz*, 691 N.W.2d at 478.

Here, although the photographs carry the risk of encouraging jurors to convict Johnson because he possessed a gun at times other than the one for which he was

8

charged, that risk is not substantially outweighed by the probative value of the photographs. We conclude that the district court did not abuse its discretion by admitting the photographs into evidence.

**Affirmed.**