*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0093**

State of Minnesota,
Respondent,

vs.

Donald Timothy Palardis,
Appellant.

**Filed December 1, 2014
Affirmed in part, reversed in part, and remanded
Kirk, Judge**

Wilkin County District Court
File No. 84-CR-13-113

Lori Swanson, Attorney General, Matthew Frank, Assistant Attorney General, St. Paul, Minnesota; and

Timothy E.J. Fox, Wilkin County Attorney, Breckenridge, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Michael W. Kunkel, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Rodenberg, Presiding Judge; Kirk, Judge; and Huspeni, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**KIRK**, Judge

On appeal from his conviction of theft of a firearm, appellant argues that the district court erred by (1) denying his motion to suppress evidence because the warrant was not supported by probable cause and (2) ordering him to pay $6,151.13 in restitution. Appellant also submitted a pro se supplemental brief. We affirm in part, reverse in part, and remand to the district court.

## FACTS

On March 23, 2013, D.S. and K.S. returned home from a two-week vacation to find that their home had been burglarized. They notified the police about the burglary, and a Wilkin County deputy responded to the report. D.S. and K.S. identified numerous items that had been taken from the home, including six guns.

The police investigation led the police to appellant Donald Timothy Palardis, who Wilkin County deputies arrested on March 26. The deputies obtained a search warrant for the vehicle in which appellant was riding at the time of his arrest, and upon searching the vehicle they found several items that D.S. identified as being stolen from his home, as well as other items that connected the occupants of the vehicle to the burglary. On March 28, respondent State of Minnesota charged appellant with second-degree burglary (count one) and theft of a firearm (count two).

On March 29, an Otter Tail County detective stopped a vehicle because he knew the driver, J.S., did not have a valid driver's license. During the traffic stop, J.S. told the detective that he had a gun in the backseat of his vehicle that he obtained from a man

named C.H. The detective took custody of the gun, which he identified as a .22 caliber Ruger, and showed it to D.S., who identified it as one of the guns stolen from his residence. Based on the information he had gathered, the detective sought and obtained a warrant to search C.H.'s home. The police did not find any guns when they executed the search warrant at C.H.'s home, but they received information that there were several stolen guns in the home next door. The officers went next door, received permission from the occupant of the home to enter, and found three guns in the living room. D.S. later identified the guns as belonging to him.

Appellant moved to suppress evidence obtained as a result of the search of the vehicle. Following a contested omnibus hearing, the district court denied appellant's motion to suppress. The district court held a jury trial, and C.H. testified that he agreed to hold on to four guns for appellant. He testified that appellant told him he was trying to sell the guns and did not want to keep them in the motel room where he was staying. C.H. testified that appellant delivered the guns to C.H.'s house in a tan SUV. C.H. admitted that he sold a .22 caliber Ruger, which was one of the guns that he received from appellant, to J.S. for $50. C.H. testified that he stored the rest of the guns at his neighbor's house, which was where J.S. often stayed.

The jury found appellant guilty of both counts alleged in the complaint. Appellant requested an order granting judgment of acquittal on count one, arguing that there was insufficient evidence to support the verdict, and on count two because of insufficient corroborating evidence of accomplice testimony. The district court granted appellant's motion regarding count one, but denied his second motion. The district court entered a

3

judgment of acquittal on count one and a judgment of conviction on count two and sentenced appellant to 28 months in prison.

D.S. and K.S. submitted an affidavit for restitution claiming $6,151.13, which included their uninsured losses and a $500 deductible. The district court ordered appellant to pay the full amount. This appeal follows.

**D E C I S I O N**

**I.      The district court did not err by denying appellant's motion to suppress.**

Appellant challenges the district court's denial of his motion to suppress evidence obtained from the search of the vehicle, arguing that the search-warrant affidavit was insufficient to establish probable cause. Both the United States and Minnesota Constitutions prohibit unreasonable searches and seizures. U.S. Const. amend. IV; Minn. Const. art. 1, § 10. Unless an exception applies, police usually must obtain a valid search warrant issued by a neutral and detached magistrate before searching a residence. *State v. Yarbrough*, 841 N.W.2d 619, 622 (Minn. 2014). To be valid, a search warrant must be supported by probable cause. U.S. Const. amend. IV; Minn. Const. art. 1, § 10. "Probable cause exists if the judge issuing a warrant determines that there is a fair probability that contraband or evidence of a crime will be found." *Yarbrough*, 841 N.W.2d at 622 (quotation omitted).

Appellate courts afford a district court's probable cause determination great deference. *State v. Rochefort*, 631 N.W.2d 802, 804 (Minn. 2001). "An appellate court reviews a district court's decision to issue a warrant only to consider whether the issuing judge had a substantial basis for concluding that probable cause existed." *Id.* Whether

4

probable cause exists to issue a search warrant is determined by examining the "totality of the circumstances." *State v. Zanter*, 535 N.W.2d 624, 633 (Minn. 1995). "In reviewing the sufficiency of an affidavit under the totality of the circumstances test, courts must be careful not to review each component of the affidavit in isolation." *State v. Wiley*, 366 N.W.2d 265, 268 (Minn. 1985). The components of the affidavit "viewed together may reveal . . . an internal coherence that gives weight to the whole." *Id.* (quotation omitted).

Appellant argues that there was insufficient evidence for the district court to determine that there was a fair probability that a search of the vehicle would yield additional evidence of a crime. "A sufficient 'nexus' must be established between the evidence sought and the place to be searched." *Yarbrough*, 841 N.W.2d at 622. But "direct observation of evidence of a crime at the place to be searched is not required"; instead "[a] nexus may be inferred from the totality of the circumstances." *Id.* The circumstances that the issuing court, and this court on review, may consider include "the type of crime, the nature of the items sought, the extent of the defendant's opportunity for concealment, and the normal inferences as to where the defendant would usually keep the items." *Id.* at 623.

Here, in the search-warrant affidavit, Wilkin County Sheriff Rick Fielder alleged that the deputy who responded to the burglary observed a pry mark under the doorknob of D.S. and K.S.'s house that had been made with a rounded tool, which looked similar to a mark made by a crowbar. He also alleged that D.S. and K.S. reported numerous items had been stolen from their home, including six guns.

5

Sheriff Fielder alleged that the police received two tips from D.B., the nephew of D.S. and K.S. First, on March 25, 2013, D.B. reported that the burglary suspect was a man named "Donnie P.," who was from Chicago. Donnie P. was driving a tan-colored Bravada, and had recently been staying at the Comfort Zone Inn in Rothsay. Sheriff Fielder alleged that the police corroborated D.B.'s tip by speaking with the owner of the motel, who confirmed that a female named S.F. and a male who were driving a tan-colored Bravada stayed there from March 16 through 20, and by establishing through a vehicle search that S.F. was the registered owner of a 2000 Oldsmobile Bravada. The owner of the Comfort Zone Inn also identified a photo of appellant as the man who was with S.F. at the motel. The police further corroborated D.B.'s tip by searching the motel's garbage dumpster and recovering a receipt in S.F.'s name for the nights of March 17, 18, and 19, and other items, including two keys that D.S. later identified as belonging to him. Second, Sheriff Fielder alleged that D.B. informed police officers on March 26 that he received information that an individual was selling guns out of the back of an Olds Bravada at the Comfort Zone Inn, and that someone at the Comfort Zone Inn offered to sell a .50 caliber muzzle loader for $100. He alleged that D.B.'s tip was trustworthy and reliable based on his earlier tip, which the police had corroborated.

Sheriff Fielder further alleged that Elbow Lake police officers located the suspect vehicle at an Elbow Lake residence on March 26, pulled the vehicle over as it left the residence, and identified appellant as the passenger and S.F. as the driver. He alleged that when the officers seized the vehicle, they saw several items in plain view, including a ring, a crowbar, and a jar full of change, all of which were consistent with items stolen

6

from the home of K.S. and D.S., and that K.S. identified some of the jewelry and keys as items stolen from her home.

Under the totality of the circumstances, there was a sufficient nexus between the alleged burglary and the vehicle. *See Yarbrough*, 841 N.W.2d at 622. The search-warrant affidavit alleged evidence that connected S.F. and appellant to items stolen from D.S. and K.S.'s home. Police officers also found items later identified by D.S. in the hotel garbage, along with a receipt in S.F.'s name, and items that appeared to be similar to those stolen during the burglary were observed by police in plain view in the vehicle. And the officers saw a crowbar, which was the type of tool that officers believed made the pry marks below D.S. and K.S.'s front doorknob, in plain view in the vehicle. The motel owner identified appellant as the male who stayed with S.F. at the motel. Further, D.B.'s first tip to police identified "Donnie P." from Chicago as the burglary suspect and connected him to the Olds Bravada registered to S.F. The officers partially corroborated D.B.'s tip by questioning the motel owner and searching the motel's garbage. When the police received a second tip from D.B., they reasonably believed the tip was accurate because D.B.'s first tip proved to be trustworthy and reliable.

In addition, it was reasonable for the district court to conclude that there was a fair probability that evidence remained in the vehicle due to the large quantity of items stolen, the short amount of time between the burglary and the submission of the affidavit, and the evidence that appellant lived in Chicago and had been staying with S.F. in motels in Minnesota. *See Rosillo v. State*, 278 N.W.2d 747, 749 (Minn. 1979) (stating that because of the large number of coins taken in the burglary, it was unlikely that the defendant

could have carried all of the coins on his person and it was reasonable to look for the coins at his residence).

Appellant argues that the tips from D.B. and the police officer's observations of the ring, jar of change, and crowbar are not sufficient to establish probable cause. But appellant addresses each piece of evidence separately rather than viewing the components of the search-warrant affidavit as a whole, as we must do. *See Wiley*, 366 N.W.2d at 268. When the evidence alleged in the search-warrant affidavit is considered as whole, the district court had a substantial basis to conclude that probable cause existed to search the vehicle. Therefore, the district court did not err by denying appellant's motion to suppress.

## II. The district court erred by ordering appellant to pay $6,151.13 in restitution.

Appellant argues that the district court erred by ordering him to pay restitution for the value of the unrecovered, non-firearm property taken during the burglary because he was only convicted of theft of a firearm. The state concedes that the matter should be remanded to the district court for determination of restitution based only on appellant's conviction. District courts have broad discretion in awarding restitution. *State v. Tenerelli*, 598 N.W.2d 668, 671 (Minn. 1999). "But determining whether an item meets the statutory requirements for restitution is a question of law that is fully reviewable by the appellate court." *State v. Ramsay*, 789 N.W.2d 513, 517 (Minn. App. 2010) (quotation omitted).

"A crime victim has the right to receive restitution as part of the disposition of a criminal charge." *State v. Latimer*, 604 N.W.2d 103, 105 (Minn. App. 1999) (quotation

8

omitted).  The victim's request for restitution may include out-of-pocket losses that occurred as a result of the crime.  Minn. Stat. § 611A.04, subd. 1(a) (2012).  "Restitution is only proper where the victim's losses are directly caused by the conduct for which the defendant was convicted."  *Latimer*, 604 N.W.2d at 105 (quotation omitted).

Here, D.S. and K.S. requested $6,151.13 in restitution for all of the uninsured property that was stolen or damaged during the burglary and a $500 deductible, and the district court ordered appellant to pay that amount.  But although the jury found appellant guilty of second-degree burglary and theft of a firearm, the district court acquitted him of second-degree burglary.  The district court only convicted him of theft of a firearm in violation of Minn. Stat. § 609.52, subd. 2(a)(1) (2012).  Under that statute, a person is guilty of theft of a firearm if he "intentionally and without claim of right takes, uses, transfers, conceals or retains possession of" a firearm without permission and "with intent to deprive the owner permanently of possession of the property."  Minn. Stat. § 609.52, subd. 2(a)(1).  The district court did not convict appellant of theft of any of the other unrecovered property.  Thus, the victims' other losses were not directly caused by the conduct for which appellant was convicted.  *See Latimer*, 604 N.W.2d at 105.  Accordingly, because the district court erred by ordering appellant to pay $6,151.13 in restitution, we reverse and remand the district court's restitution award for the district court to order restitution for the value of the unrecovered firearms only.

## III.   Appellant's pro se arguments do not have merit.

In his pro se supplemental brief, appellant argues that the district court erred by denying his motion to suppress evidence obtained as a result of the search and seizure of

9

S.F.'s vehicle. Although appellant frames the issue slightly differently than his counsel, it is essentially the same as his counsel's argument, which we have already addressed.

**Affirmed in part, reversed in part, and remanded.**