*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0099**

State of Minnesota,
Respondent,

vs.

Joshua Nathan Benvie,
Appellant.

**Filed January 4, 2016
Affirmed
Johnson, Judge**

Lake County District Court
File No. 38-CR-14-38

Lori Swanson, Attorney General, Matthew Frank, Assistant Attorney General, St. Paul, Minnesota; and

Laura M. Auron, Lake County Attorney, Two Harbors, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Anders J. Erickson, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Cleary, Chief Judge; Connolly, Judge; and Johnson, Judge.

**U N P U B L I S H E D   O P I N I O N**

**JOHNSON**, Judge

A Lake County jury found Joshua Nathan Benvie guilty of being an ineligible person in possession of a firearm and of possessing a short-barreled shotgun. The jury's

verdict is based on evidence obtained during a search of his residence pursuant to a search warrant. Benvie argues that the district court erred by denying his motion to suppress the evidence obtained during the search. We affirm.

**FACTS**

On February 3, 2014, Benvie brought a broken chainsaw chain to Larson's Outdoor Power Equipment for repair. Keith Larson repaired the chain. The following day, Benvie again brought a chainsaw chain to Larson's shop. Larson again performed the repair and also suggested that Benvie bring the chainsaw to the shop so that Larson could determine what was causing the chain to break.

On February 5, 2014, another man, R.L., dropped off the chainsaw at Larson's shop for repair. R.L. explained that the chainsaw belonged to Benvie and that he was bringing the chainsaw to Larson on Benvie's behalf. While working on the chainsaw, Larson became suspicious. Larson examined the chainsaw's serial number, compared it to his records, and discovered he had sold the chainsaw to G.G. Larson called G.G., who told Larson that his chainsaw had been stolen. Larson then called the Two Harbors Police Department to report his discovery.

Two police officers went to Larson's shop. When R.L. returned, the officers arrested him for possession of stolen property and transported him to the police station for questioning. R.L. told the officers that he had received the chainsaw from Benvie, who asked him to bring it to Larson's shop. The officers also learned from Larson that R.L. had said that the chainsaw belonged to Benvie. In addition, the officers learned

2

from another police department that G.G.'s residence had been burglarized in October 2013, resulting in the loss of numerous household items.

The officers prepared an application for a warrant to search Benvie's residence for further evidence of the burglary of G.G.'s residence. The warrant application included, among other things, the information received from Larson and R.L.; information concerning Benvie's criminal history, including prior convictions for second- and third-degree burglary; and information concerning Benvie's current residence. The application sought a warrant to search Benvie's residence (including outbuildings and vehicles) for all other items stolen in the October 2013 burglary of G.G.'s residence. Attached to the warrant application was a five-page list of approximately 100 items that were stolen in the burglary, including an expensive 1960s-era guitar, an expensive six-piece cooking set, various tools, and other common household items.

The officers submitted the warrant application on February 6, 2014, and the district court approved it. Later that day, the officers executed the search warrant. During the search, the officers found a bag that they suspected to contain methamphetamine, two unused needles, a container with multiple used needles, and a glass pipe. The officers also found a short-barreled shotgun.

The state charged Benvie with three offenses: (1) being an ineligible person in possession of a firearm, in violation of Minn. Stat. § 609.165, subd. 1b(a) (2012); (2) fifth-degree controlled substance crime based on Benvie's possession of methamphetamine, in violation of Minn. Stat. § 152.025, subd. 2(a)(1) (2012); and (3) possession of drug paraphernalia, in violation of Minn. Stat. § 152.092 (2012). In

3

May 2014, the state amended the complaint by adding another charge: (4) possession of a short-barreled shotgun, in violation of Minn. Stat. § 609.67, subd. 2 (2012).

In April 2014, Benvie moved to suppress the evidence found during the search of his residence. Benvie argued that the warrant application was not supported by probable cause because there was no nexus between the items stolen from G.G.'s residence and his own residence. In May 2014, the district court denied Benvie's motion.

Before trial, Benvie pleaded guilty to count 3, the charge concerning his possession of drug paraphernalia, and the state voluntarily dismissed count 2, the charge alleging Benvie's possession of a controlled substance. In September 2014, the case proceeded to trial on counts 1 and 4, the charges concerning the firearm found in Benvie's residence. The jury found Benvie guilty on both counts. In October 2014, the district court imposed a sentence of 60 months of imprisonment on count 1. Benvie appeals.

## DECISION

Benvie argues that the district court erred by denying his motion to suppress evidence. Specifically, he argues that the search-warrant application did not establish probable cause for a search of his residence because there was an insufficient nexus between the stolen items that the officers were seeking and his residence.

The Fourth Amendment to the United States Constitution guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" and states that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched,

4

and the persons or things to be seized." U.S. Const. amend. IV; *see also* Minn. Const. art. I, § 10. "Probable cause exists if the judge issuing a warrant determines that 'there is a fair probability that contraband or evidence of a crime will be found.'" *State v. Yarbrough*, 841 N.W.2d 619, 622 (Minn. 2014) (quoting *Illinois v. Gates*, 462 U.S. 213, 238, 103 S. Ct. 2317, 2332 (1983)). Whether probable cause exists is a "practical, common-sense decision." *Id.* On appeal, this court must determine "whether the judge issuing the warrant had a substantial basis for concluding that probable cause existed." *Id.* (internal quotation omitted).

The supreme court recently summarized the principles that govern Benvie's appeal:

> Probable cause not only requires that the evidence sought likely exists, but also that there is a fair probability that the evidence will be found at the specific site to be searched. A sufficient "nexus" must be established between the evidence sought and the place to be searched. However, direct observation of evidence of a crime at the place to be searched is not required. A nexus may be inferred from the totality of the circumstances. Among the circumstances the issuing judge . . . considers in determining whether there is probable cause to believe that the evidence sought will be found at a particular place are the type of crime, the nature of the items sought, the extent of the defendant's opportunity for concealment, and the normal inferences as to where the defendant would usually keep the items.

*Id.* at 622-23 (quotations and citations omitted).

In this case, the district court found that there was a nexus between the items for which the police officers were searching (*i.e.*, the items that had been stolen in the burglary of G.G.'s residence) and Benvie's residence. The district court determined that

it was reasonable to believe that Benvie probably committed the burglary of G.G.'s residence and, furthermore, that the other items stolen during the burglary probably would be found in Benvie's residence.

Benvie briefly challenges the premise that the warrant application contains probable cause that he committed the burglary of G.G.'s residence. He contends, "There was no information connecting Appellant to the alleged burglary four months earlier" and "no information that Appellant ever possessed a stolen item from the burglary, other than the stolen chainsaw." This contention is, in essence, self-defeating. The information that Benvie possessed the stolen chainsaw is information that connects him to the burglary of G.G.'s residence. For purposes of a probable-cause determination, it is reasonable to believe that a person who possesses stolen property likely is the person who stole the property. *See State v. Flom*, 285 N.W.2d 476, 477 (Minn. 1979).

Benvie's primary challenge is to the premise that the other items stolen during the burglary of G.G.'s residence likely would be found in his residence. He contends, "There was no information that Appellant had kept the stolen chainsaw at his residence" and "no information indicating that Appellant ever made any statements about stolen items being in his residence." Benvie is correct that the police officers had not received any information from any person that Benvie possessed the stolen items in his residence. But the lack of such information does not preclude the issuing judge from making such an inference, if the inference is supported by other information in the search-warrant application. *See Yarbrough*, 841 N.W.2d at 622 (noting that "direct observation of evidence of a crime at the place to be searched is not required"). To reiterate, the

determination whether probable cause exists is a "practical, common-sense decision," *id.*, and an issuing judge is permitted to draw "the normal inferences as to where the defendant would usually keep the items," *id.* at 623.  The key question is whether, given the circumstances, and assuming that Benvie committed the burglary of G.G.'s residence, it was reasonable for the issuing judge to believe that Benvie probably would keep the stolen items at his residence as opposed to some other place.

This "practical, common-sense decision" depends on the nature of the items sought.  *See id.* at 622-23.  In a case concerning items stolen from a person's lake home, the supreme court recognized that "the normal place defendant would be expected to keep such items would be at his house." *Flom*, 285 N.W.2d at 477.  In a case concerning a large number of stolen coins, the supreme court reasoned that "the normal place that defendant would be expected to keep those coins which he could not carry would be at his residence." *Rosillo v. State*, 278 N.W.2d 747, 749 (Minn. 1979).  In this case, the officers were searching for approximately 100 household items that had been stolen from G.G.'s residence, including, as noted above, a guitar, a six-piece cooking set, and tools.  Given the sheer number of stolen items, as well as the fact that some items were too large to carry on one's person, it is only natural to expect that the items would be kept in a person's home.  Thus, in drawing a "normal inference[] as to where the defendant would usually keep the items," *Yarbrough*, 841 N.W.2d at 623, the issuing judge was permitted to infer that Benvie would keep the fruits of the burglary at his home.

Benvie relies on *State v. Souto*, 578 N.W.2d 744, 747 (Minn. 1998), in which the supreme court concluded that there was an insufficient nexus between the appellant's

suspected drug-trafficking and her residence. *Id.* at 747-49. The case is distinguishable for a few reasons. First, the search warrant in *Souto* sought controlled substances, which are smaller in size and easier to keep at a place other than a person's home. *See id.* at 747-49; *see also Yarbrough*, 841 N.W.2d at 623. But the items sought in this case are more similar to the stolen property in *Flom* and *Rosillo*. Second, the investigating officers in *Souto* were relying on stale information, which was several months old. *Souto*, 578 N.W.2d at 748, 750. In this case, the officers' warrant application relied on information that they had received no more than one day earlier. Third, in *Souto*, the information in the warrant application connecting the defendant to the suspected criminal activity was tenuous and circumstantial. *See id.* at 748-49. In this case, in contrast, Benvie's possession of a chainsaw that was known to have been stolen in a burglary provided a strong basis for a finding of probable cause. Thus, the *Souto* opinion does not compel the conclusion that there was no nexus between the items sought in the search-warrant application and Benvie's residence.

In sum, the district court did not err by denying Benvie's motion to suppress the evidence seized at his residence pursuant to the search warrant.

**Affirmed.**