*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0675**

State of Minnesota,
Respondent,

vs.

Earl Eugene Ashmore,
Appellant.

**Filed May 9, 2016
Affirmed
Ross, Judge**

Dakota County District Court
File No. 19HA-CR-13-2407

Lori Swanson, Attorney General, St. Paul, Minnesota; and

James C. Backstrom, Dakota County Attorney, Chip Granger, Assistant County Attorney, Hastings, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Davi E. Axelson, Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Reyes, Presiding Judge; Ross, Judge; and Klaphake, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**ROSS**, Judge

Police executed a no-knock, nighttime search warrant at Earl Ashmore's South St. Paul home and found drug paraphernalia, methamphetamine, and pills of another controlled substance. Ashmore moved the district court to suppress the evidence, arguing that the deputies obtained the warrant by misrepresentations in the supporting affidavit. The district court found that the allegedly false statements were not intentionally or recklessly included, and it found Ashmore guilty of second-degree controlled substance crime. Because the district court's suppression-hearing findings are not clearly erroneous, we reject Ashmore's evidentiary challenge on appeal and affirm his conviction.

**FACTS**

In July 2013 Ramsey County deputy sheriff Kevin Vanderhyde provided a district court judge with his affidavit and asked the judge to issue a no-knock, nighttime search warrant for a duplex in South St. Paul. The accuracy of the deputy's affidavit is the primary subject of this appeal.

Deputy Vanderhyde's affidavit stated that he met with a confidential informant who told him that Earl Ashmore and S.T. were selling methamphetamine from the home. The affidavit stated that the informant claimed to have purchased methamphetamine from the two within the previous 30 days. The deputy further avowed that he had met with the informant "for the purpose of conducting multiple controlled buys of methamphetamine from 'Earl Ashmore' and [S.T.]," and that he oversaw two successful controlled buys

within the previous three weeks. The affidavit stated that, in both instances, the informant had entered the home and purchased methamphetamine from S.T.

Deputy Vanderhyde's affidavit also stated that in April 2006, deputies had searched for narcotics "at a different address involving the same two . . . individuals" and found miscellaneous pills, packaging materials, drug scales, and ammunition. According to the affidavit, the deputy learned that in January 2012 the Dakota County Drug Task Force had executed a warrant at the same duplex and found narcotics, drug scales, video surveillance equipment, and firearms, and that in May 2012 the home was the site of a drug-related burglary. The affidavit said that police had arrested Ashmore and S.T. in July 2013 for burglarizing a storage locker, that police found S.T. with a gun and a meth pipe, and that charges for this incident were "pending."

The district court issued the search warrant as requested, based on Deputy Vanderhyde's affidavit. Six days later, police executed the warrant and found drug paraphernalia, several bags of methamphetamine, and a bag containing 54 pills of Alprazolam, a schedule IV controlled substance. Six people were inside the apartment, including Ashmore. Ashmore admitted to police that methamphetamine in a bedroom drawer belonged to him. The state charged him with one count of second-degree controlled substance crime under Minnesota Statutes section 152.022, subdivision 2(a)(1) (2012).

Ashmore moved the district court to suppress the evidence from the search and asked it to order the state to disclose the confidential informant's identity. The district court conducted a hearing at which Ashmore argued that the warrant application erroneously included the 2006 search because the affidavit did not include facts establishing that

3

Ashmore had committed any crime. Deputy Vanderhyde acknowledged that his affidavit did not indicate that Ashmore was living at the 2006 searched residence or indicate that Ashmore "had anything to do with that incident." He said that he included the information to show "ongoing criminal events." Ashmore also challenged the deputy's affidavit statement that he met with the informant "for the purpose of conducting multiple controlled buys of methamphetamine from 'Earl Ashmore' and [S.T.]" because the affidavit did not indicate that Ashmore was involved in the two buys. The deputy testified that he included both names because the informant had told them that purchases were made from Ashmore and S.T. in the past, and the deputy did not know who would be present at the controlled buys.

Ashmore argued too that the affidavit improperly included the statements about the January and May 2012 incidents and the 2013 burglary. South St. Paul police officer John Busch testified about his communication with Deputy Vanderhyde concerning those events. Officer Busch said that he told Deputy Vanderhyde about the January 2012 incident because knowledge of weapons and drugs would alert the deputy of the officer-safety concerns. The officer believed that the May 2012 drug-related incident similarly demonstrated the "level of violence that has occurred at the house." Likewise, he explained that the 2013 storage-locker burglary—in which police associated S.T. with a gun— revealed officer-safety risks. The officer told Deputy Vanderhyde that charges were "pending" because he believed that Ashmore had been arrested and released but was still being investigated.

4

The district court found that the deputy had not intentionally or recklessly included the allegedly false or misleading statements in the affidavit, and it held that the warrant contained sufficient facts to establish probable cause for the nighttime search. It denied Ashmore's motion to suppress and to force the state to disclose the informant's identity. Ashmore entered a *Lothenbach* plea, preserving his opportunity to appeal the suppression decision.[1] The district court found Ashmore guilty of second-degree controlled substance crime. This appeal follows.

## DECISION

Ashmore asks us to reverse the district court's denial of his motion to suppress evidence obtained during the search, arguing that the search warrant application included insufficient facts to establish probable cause to believe that evidence of a crime was in his home. The United States and Minnesota Constitutions prohibit courts from issuing warrants without probable cause. U.S. Const. amend. IV; Minn. Const. art. I, § 10. A search is generally constitutional only if it is executed based on a valid search warrant issued by a neutral judge who received evidence that established probable cause. *See State v. Yarbrough*, 841 N.W.2d 619, 622 (Minn. 2014). Probable cause exists when "there is a fair probability that contraband or evidence of a crime will be found." *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 238, 103 S. Ct. 2317, 2332 (1983)). We review search warrant

---

[1] Although Ashmore's plea was purportedly entered under the procedures outlined in *State v. Lothenbach*, 296 N.W.2d 854 (Minn. 1980), we recognize that Minnesota Rule of Criminal Procedure 26.01, subdivision 4, has superseded *Lothenbach* and provides the mechanism for stipulating to the prosecution's case without waiving pretrial issues for appeal. Minn. R. Crim. P. 26 cmt.

decisions to determine whether, based on the totality of the circumstances, the judge had a substantial basis to find probable cause. *Id.*

Ashmore argues that without the misleading statements in the warrant application, police lacked probable cause to believe that they would find drugs in his home. He bases this argument first on the theory that the 2013 burglary and the prior occasions where guns and drugs were found should be excluded because the affidavit never indicated that the state had charged him with any crimes based on those incidents. For a search warrant to be invalidated because of misstatements in the supporting affidavit, a defendant must show that the officer deliberately or recklessly made false statements and that the statements were material to the probable cause determination. *State v. Andersen*, 784 N.W.2d 320, 327 (Minn. 2007) (citing *Franks v. Delaware*, 438 U.S. 154, 171–72, 98 S. Ct. 2674, 2684 (1978)). We review for clear error a district court's finding as to whether a warrant affiant deliberately or recklessly made false statements. *Id.*

The district court found that the affidavit did not arise from intentional untruths or the reckless disregard for the truth. It found instead that Officer Busch told Deputy Vanderhyde about the prior home searches and the storage-locker burglary because they were relevant to officer safety and to the request for a no-knock, nighttime warrant. Ashmore does not explain why we should hold those findings clearly erroneous. Because we are in no position to second-guess the district court's credibility determinations and the record reveals the evidentiary basis on which the district court made its challenged findings, we hold that the findings are not clearly erroneous and, consequently, the search warrant is not invalidated under the *Franks* standard.

Ashmore asks us to hold that probable cause was lacking on the ground that the warrant rested on information from an undisclosed, confidential informant, whom the district court should have deemed unreliable. At least six factors help determine the reliability of a confidential informant:

> (1) a first-time [civilian] informant is presumably reliable; (2) an informant who has given reliable information in the past is likely also currently reliable; (3) an informant's reliability can be established if the police can corroborate the information; (4) the informant is presumably more reliable if the informant voluntarily comes forward; (5) in narcotics cases, "controlled purchase" is a term of art that indicates reliability; and (6) an informant is minimally more reliable if the informant makes a statement against the informant's interests.

*State v. Ross*, 676 N.W.2d 301, 304 (Minn. App. 2004).

The third and fifth factors are relevant here. Police administered two controlled buys at Ashmore's home within the three weeks before police sought the search warrant. Both times the informant successfully purchased methamphetamine from S.T., and this sufficiently corroborated the informant's statement that drugs were being sold from the home and, consequently, supported the informant's reliability. Ashmore argues that the warrant affidavit was nevertheless misleading because it did not detail Ashmore's role in the controlled purchases. But the district court found that Deputy Vanderhyde did not intentionally mislead the judge by avowing that he met with the informant "for the purpose of conducting multiple controlled buys of methamphetamine from 'Earl Ashmore' and [S.T.]," because the deputy had indeed intended the informant to buy drugs at the home and, at the time, the deputy was unsure whether Ashmore or S.T. would serve as the seller.

7

The affidavit specifies that S.T. (not Ashmore) turned out to be the seller. The findings have support in the record, and again Ashmore provides no argument explaining why they are erroneous.

The circumstances in the warrant sufficiently established that police may find drugs in Ashmore's home and that the search circumstances might pose a risk to the officers. The district court therefore did not err by denying Ashmore's motion to suppress the evidence that police discovered when they executed the nighttime search warrant.

Ashmore asserts without elaboration in his pro se supplemental brief that his Sixth Amendment right to confront his accusers required the district court to disclose the informant's identity. But he does not develop the argument or provide any authority in support. *See State v. Krosch*, 642 N.W.2d 713, 719 (Minn. 2002) (deeming allegations unsupported by argument or authority to be waived). His other arguments generally charge that the officers lied and that no evidence exists proving that the controlled buys actually occurred. He points to several documents for support, but we do not consider them because they are outside the record. *See Fabio v. Bellomo*, 489 N.W.2d 241, 246 (Minn. App. 1992), *aff'd*, 504 N.W.2d 758 (Minn. 1993). We restate, our look at the record satisfies us that the district court did not clearly err by finding that the affidavit did not arise from intentional or reckless falsehood.

**Affirmed.**

8